UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tricia Lynn Molls and Kurt Molls,<br><br>Plaintiffs,<br><br>vs.<br><br>Mayo Clinic,<br><br>Defendant. | Civil No.: 25-CV-2800-DTS<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MAYO'S MOTION FOR PROTECTIVE ORDER** |

**INTRODUCTION**

Plaintiff Tricia Molls ("Plaintiff" or "Ms. Molls") seeks deposition testimony from Defendant Mayo Clinic ("Mayo") that far exceeds the scope of permissible discovery. Plaintiff seeks Rule 30(b)(6) testimony regarding information protected by Minnesota's peer-review statute, lay-witness testimony on expert opinions and legal conclusions, corporate representative testimony about information exclusively within the personal knowledge of the nurse whose care is at issue (whom Plaintiff of course plans to depose), and other testimony about topics that sweep far beyond any claim or defense in this action. Plaintiff also seeks to depose employees from Mayo's Office of Patient Safety, whose only knowledge of this case derives from statutorily protected peer review activities.

Mayo seeks protection from these inappropriate depositions under Rule 26(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Mayo respectfully requests that the Court enter a protective order (1) relieving Mayo of any obligation to produce a corporate representative on the disputed topics and (2) precluding Plaintiff from deposing Mayo's Patient Safety personnel.

## FACTUAL BACKGROUND

### I. CARE AND CLAIMS

This case stems from a blood draw that Ms. Molls underwent at Mayo on June 10, 2023. Ms. Molls had previously undergone a successful stem cell transplant at Mayo to treat multiple myeloma. Am. Compl. ¶ 9 (ECF No. 31). To facilitate routine vascular access at her follow-up appointments, Mayo providers implanted Ms. Molls with a central venous catheter in May 2023—specifically, a Palindrome catheter manufactured by Medtronic (the "Catheter"). *Id.* ¶ 8.

At a follow-up appointment on June 10, Nurse Abigail Weiss was tasked with performing a routine blood draw on Ms. Molls, with access via the implanted Catheter. During the course of that blood draw, Ms. Molls began feeling unwell and suddenly experienced a medical emergency. *Id.* ¶¶ 11–15. Mayo providers promptly responded and Ms. Molls was transferred to the ICU. *Id.* ¶¶ 17–18. Imaging later confirmed that Ms. Molls had suffered an air embolism, for which Mayo treated her. *Id.* ¶¶ 19–20.

Following the June 10 incident, and following standard Mayo protocols for patient safety events, Mayo's Office of Patient Safety immediately became involved to investigate the event. Declaration of Nicole Schueler ("Schueler Dec.") ¶¶ 3-5. On August 7, 2023, Mayo sent the Catheter to Medtronic for review. Declaration of Alan Iverson ("Iverson Dec.") Ex. A at Mayo_Molls_00010213. Medtronic received the Catheter on August 10, 2023. *Id.* Mayo sent Ms. Molls a letter confirming that Mayo's assessment of the Catheter did not reveal any punctures, holes, or visual deficiencies, but that the Catheter was currently at Medtronic undergoing further assessment. *Id.*, Ex. B at TM_DISC_0268.

On October 11, 2023, Medtronic informed Mayo that Medtronic had lost the Catheter. *Id.*, Ex. A at Mayo_Molls_00010209.

Plaintiff filed her original Complaint on July 8, 2025, pleading a single count of medical negligence. Compl. ¶¶ 27–32 (ECF No. 1); *see also* Am. Compl. ¶¶ 27–32. Plaintiff alleges that Nurse Weiss deviated from the standard of care in two respects: by failing to position Ms. Molls with the Catheter hub at or below the level of her heart, and by failing to use equipment to keep the Catheter lumen closed when nothing was attached to it. Am. Compl. ¶ 28. Plaintiff alleges that those claimed departures caused an air embolism and a resulting embolic stroke. *Id.* ¶¶ 26, 29. The Complaint asserts no direct claim against Mayo itself: Plaintiff pleads no claim for negligent training, supervision, credentialing, or policymaking, and neither Plaintiff's Complaint nor her expert disclosures identify any allegedly negligent caregiver other than Nurse Weiss. Plaintiff filed an amended complaint on May 21, 2026, adding Kurt Molls as a Plaintiff and allegations related to loss of consortium. *Id.* ¶ 31.

## II. FACTS RELEVANT TO THIS MOTION

Mayo has already engaged in substantial discovery. Mayo has produced 10,254 pages of documents, including Ms. Molls's Mayo medical record, policies and procedures related to the procedure and equipment at issue, non-privileged communications related to the incident, and Nurse Weiss's employment and training records. Iverson Dec. ¶ 2. Plaintiff has noticed the depositions of Nurse Weiss and Michele Benz, Nurse Weiss's manager, and the parties will schedule these depositions pending resolution of this motion. *Id.* ¶ 3.

**A. Plaintiff's Rule 30(b)(6) Notice**

On April 30, 2026, Plaintiff served a Notice of Rule 30(b)(6) Deposition of Mayo Clinic and Attachment A thereto, designating 27 topics for examination. Iverson Dec. Ex. C. On April 17, Plaintiff informed Mayo she intended to seek leave to amend her complaint. Iverson Dec. ¶ 4. Following multiple meet-and-confer conferences with Mayo and obtaining leave, Plaintiff filed an amended complaint on May 21, 2026 (ECF No. 31) and the parties resumed discovery. Mayo served its Responses and Objections to Plaintiff's Rule 30(b)(6) notice on June 12, 2026. Iverson Dec. Ex. D. On June 23, 2026, Plaintiff served her Amended Notice, which withdrew two topics and slightly amended six others. Iverson Dec. Ex. E.

Plaintiff's Amended Notice, and Mayo's objections, are summarized below:

**Peer Review Information (Topics 9 and 19).** Plaintiff seeks testimony regarding the membership and activities of Mayo's peer-review organizations. Topic 9 seeks "[t]he identity and position of each member of any Mayo Section 145.61 review organization in June–December 2023, and the dates and participants of any activities directed by such review organization which relate to Tricia Molls," while Topic 19 seeks "[a]ll actions undertaken by Mayo to ascertain the cause/root cause of Tricia Molls's air embolism, the identity of all persons so involved, and all information received and findings adduced." Mayo objects that these Topics seek testimony regarding information categorically protected by Minnesota's peer review statute, Minn. Stat. §§ 145.61 *et seq*.

**Expert Opinion Regarding Medical Causation (Topics 1, 2, 4, 5, 6, and 23).** Plaintiff seeks corporate testimony from Mayo regarding whether and how air was introduced into Ms. Molls's vascular system, the pathways by which any air

reached her brain, whether Ms. Molls suffered an air embolism stroke, and what caused Ms. Molls's injury. Mayo objects that these Topics impermissibly ask a fact witness to provide expert testimony.

**Nurse Weiss's Personal Knowledge (Topics 10, 16, 20, 24, and 25).** Plaintiff seeks corporate testimony from Mayo regarding facts within Nurse Weiss's personal knowledge, including her statements about the care, her training related to central venous catheter use, steps she took to document or demonstrate the June 10 blood draw, and steps she took to respond to or treat Ms. Molls. Mayo objects that these Topics seek information known only by Nurse Weiss—whom Plaintiff have already noticed for deposition.

**Mayo Training and Policies (Topics 11, 12, 14, and 15).** Plaintiff seeks testimony regarding Mayo's guidelines, policies, protocols, and training programs concerning the procedure at issue in the case, preventing air from entering the vascular system during the procedure, and reporting adverse events. Mayo objects that these Topics are disproportionate and unduly burdensome because they are duplicative of written discovery, would require substantial effort to prepare for, and would, necessarily, only result in inadmissible testimony under Minn. Stat. §§ 145.61 *et seq*., which prohibits introduction of evidence of such policies in a medical malpractice action.

**The Catheter (Topics 7, 8, 17, 18, and 23).** Plaintiff seeks testimony related to the Catheter, including whether it was subject to any recall, what actions Mayo took after the June 10 incident, the steps Mayo took to inspect or examine the Catheter, and any known defects. Mayo objects that these topics are moot in light of the parties' proposed stipulation that the Catheter was not subject to recall, seek

improper contention testimony, seek testimony exclusively within the knowledge of Ms. Molls's treating providers and, in part, seek testimony related to Mayo's peer-review organizations.

**Outside Reporting and Similar Incidents (Topics 13 and 27).** Plaintiff seeks testimony regarding whether and how Mayo reported the June 10 incident to outside institutions, and the circumstances, causes, and root causes of any purportedly similar incident at any Mayo hospital from 2015 to the present. Mayo objects that these Topics are irrelevant and disproportionate, seek peer-review protected material, and implicate the privacy of non-party patients.

**Plaintiff's Medical Records and Undocumented Care (Topics 21 and 26).** Plaintiff seeks testimony regarding whether Ms. Molls's medical record—which spans multiple years of treatment and over 10,000 pages—contains any errors bearing on any issue in the case, and the medical steps any Mayo personnel took to treat Ms. Molls that are *not* documented in the medical record. Mayo objects that these Topics are vague, overbroad, unduly burdensome, and are duplicative of written discovery Mayo has already answered.

### B. Plaintiff Seeks Individual Depositions of Mayo's Patient Safety Employees

On June 10, 2026, Plaintiff indicated she would seek to depose three Mayo employees employed in Patient Safety roles: Patient Safety Manager Janee Klipfel; Patient Safety Specialist Deirdre Kolb; and Patient Safety Specialist Nicole Schueler (collectively, "Patient Safety Personnel"). Mayo responded that these individuals were not involved in the care at issue and had no relevant knowledge outside of the peer-review process. As such, Mayo indicated that it would not

produce these individuals for a deposition and would move for a protective order if Plaintiff insisted on proceeding with these depositions.[1]

**C. Meet and Confer Efforts**

The parties met and conferred on June 15, 2026, and Plaintiff thereafter served an Amended Attachment A, withdrawing two topics and revising six. Iverson Dec. Ex E. Plaintiff's Amended Notice did not resolve Mayo's concerns, and Mayo informed Plaintiff that it intended to move for a protective order. The parties held a pre-motion conference with the Court on July 8, 2026 (ECF No. 37) and Mayo now brings this motion seeking relief as outlined below.

## ARGUMENT

Plaintiff's 30(b)(6) Notice and proposed depositions of Mayo's Patient Safety Personnel are improper and outside the scope of Rule 26, and Mayo has good cause for a protective order.

**A. Legal Standard**

Federal Rule of Civil Procedure 26 governs the scope of discovery. To be discoverable, information must be nonprivileged, relevant, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In determining proportionality, courts consider the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit. *Id*.

---

[1] Plaintiff has not yet served deposition notices regarding these three individuals, but Mayo raises the issue here because this issue overlaps with the substance of this Motion, *i.e.*, whether Plaintiff can seek testimony regarding peer-review information protected from discovery by Minn. Stat. §§ 145.61 *et seq.*

A court "must" limit discovery if it determines "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Further, the Court can preclude discovery when the "discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Federal Rule of Civil Procedure 30(b)(6) enables litigants to depose a corporation, through its designated representative(s), on specific, noticed topics. "[T]o allow the Rule to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000). In return, the corporation must prepare its designee(s) to testify about matters "known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

Noticed topics remain subject to the limits of Rule 26, and courts in this District regularly sustain objections to—and enter protective orders striking or narrowing—Rule 30(b)(6) topics that exceed those limits. *See, e.g., Elsherif v. Mayo Clinic*, No. 18-cv-2998-DWF-KMM, 2020 U.S. Dist. LEXIS 154361, at *2 (D. Minn. Aug. 25, 2020) (granting protective order as to improper Rule 30(b)(6) topics); *Fairview Health Servs. v. Quest Software*, No. 20-cv-1326 (SRN/LIB), 2021 U.S. Dist. LEXIS 215816, at *7 (D. Minn. Sept. 24, 2021) (denying motion to compel 30(b)(6) witness).

When a party fails to adhere to the limits of discovery, a party may move for a protective order, including "on matters relating to a deposition." Fed. R. Civ.

P. 26(c)(1); *see also 3M Co. v. ACS Indus.*, No. 15-1889 (PAM/JSM), 2016 U.S. Dist. LEXIS 199199, at *9 (D. Minn. Mar. 10, 2016) (granting motion for protective order precluding deposition); *Bores v. Domino's Pizza, LLC*, No. 05-2498 (RHK/JSM), 2007 U.S. Dist. LEXIS 106868, at *86 (D. Minn. Jan. 25, 2007) (same). Upon "good cause shown," a court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense." *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013).

A court has wide discretion to craft a protective order as necessary to suit the needs of the case. *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993) (noting a court has broad discretion to decide discovery motions). This includes forbidding discovery, limiting the scope of discovery, prescribing a particular method, or dictating who can be present for discovery. Fed. R. Civ. P. 26(c)(1)(A), (C), (D), (E). The Court should grant a protective order when the movant shows "good cause." *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973).

### B. Minnesota Law Precludes Testimony Related to Peer-Review Activities (Topics 9 and 19)

Plaintiff impermissibly seeks testimony regarding Mayo's peer-review organizations and the statutorily protected investigation of the incident at issue in this case. In Topic 9, Plaintiff seeks testimony regarding the "identity and position of each member of any Mayo Section 145.61 review organization in June–December 2023," as well as "the dates and participants of any activities directed by such review organization which relate to Tricia Molls." Topic 19 seeks testimony regarding "[a]ll actions undertaken by Mayo to ascertain the cause/root cause of Tricia Molls's air embolism, the identity of all persons so involved, and all information received and findings adduced."

Minnesota's peer review statute categorically bars Plaintiff's requests. Minn. Stat. § 145.64 provides that "data and information acquired by a review organization… ***shall not be subject to subpoena or discovery.***" Minn. Stat. § 145.64 (emphasis added). The statute further provides that "proceedings and records of a review organization ***shall not be subject to discovery or introduction into evidence*** in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization." *Id.* (emphasis added).[2] "Any disclosure other than that authorized by section 145.64, of data and information acquired by a review committee or of what transpired at a review meeting, is a misdemeanor." *Id.* § 145.66.

Minnesota's peer review statute "provides a ***broad*** grant of confidentiality for the proceedings and records of medical peer review organizations." *Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn. 1999) (emphasis added). The statute reflects Minnesota's strong public policy favoring candid peer review to improve "the quality of health care," *Kalish v. Mount Sinai Hosp.*, 270 N.W.2d 783, 785 (Minn. 1978), and the privilege exists to ensure that the discussions necessary to improve patient care occur freely, notwithstanding the threat of malpractice litigation. *In re Fairview-Univ. Med. Ctr.,* 590 N.W.2d 150, 153 (Minn. Ct. App. 1999).

This is true even where it may frustrate plaintiffs' ability to discover relevant information. The statute contains no exception permitting disclosure of protected

---

[2] In diversity cases, federal courts must apply Minnesota law as to the existence and scope of privileges. Fed. R. Evid. 501 (providing that in a civil case, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *see also Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1477 (8th Cir. 1987); *Filz v. Mayo Found.*, 136 F.R.D. 165, 168 (D. Minn. 1991).

information simply because it is perceived as important—or even critical—to a plaintiff's case. *See Larson v. Wasemiller*, 738 N.W.2d 300, 310 (Minn. 2007) (noting that "the confidentiality provision [established by Minn. Stat. § 145.64, subd. 1] may provide a greater advantage to hospitals than to patients").

Minn. Stat. § 145.64 bars Topics 9 and 19, which explicitly call for corporate testimony related to the "proceedings and records" of Mayo's review organizations.

Topic 19 runs brazenly afoul of the peer-review statute: it seeks testimony regarding "all actions undertaken by Mayo to ascertain the cause/root cause" of the embolism, "all information received," and all "findings adduced." Root-cause analysis of an adverse patient event is a fundamental function of a review organization, *see* Minn. Stat. § 145.61, subd. 5, and a fundamental purpose of the statute is to ensure candor in the process by shielding the ***entire process*** from discovery. See *In re Fairview.,* 590 N.W.2d at 153. (affirming that the "confidentiality provision encompasses ***all*** documents contained in review organization files") (emphasis added); *Woodburn v. Saint Paul Pathology, P.A.*, 1993 Minn. App. LEXIS 732, at *14 (Minn. App. July 20, 1993) (finding that plaintiff could not discover "hospital review committee documents"). This unquestionably includes the findings of the organization, as well as the "data and information" the organization acquires in the process. *In re Fairview.,* 590 N.W.2d at 153 (noting that the protection extends to all "documents a review organization obtains from other sources"). Minnesota's peer-review statute compels the Court to prohibit such testimony.

Topics 9 and 19 also seek testimony regarding the identities of the individuals who participated in the peer review process. Topic 9 demands the "identity and position of each member" of "any" Mayo review organization between June and December 2023 and the "dates and participants of any activities directed by such review organization which relate to Tricia Molls," while Topic 19 calls for "the identity of all person" involved in "ascertain[ing] the cause/root cause of Tricia Molls's air embolism." But Plaintiff has no legitimate need for this information, and the broad scope of Minnesota's peer review statute forecloses Plaintiff's inquiry. Section 145.64 renders confidential ***all*** "data and information acquired by a review organization" in the exercise of its duties, Minn. Stat. § 145.64, subd. 1, and the composition, meetings, and participants of the review organization are included within that broad protection. The peer review protection exists to guarantee the candor of the professionals who conduct the review, *Amaral*, 598 N.W.2d at 384–85, and absolute confidentiality of the process is necessary to guarantee this candor.

Indeed, courts construing materially similar statutes in other jurisdictions have held that committee-member identities are themselves protected, because it would be an "incongruous result" to shield the committee's work while exposing the identities of the very evaluators whose candor the statute is designed to secure. *Willits v. Superior Court*, 20 Cal. App. 4th 90, 97 (Cal. App. 1993) (citation omitted); *see also St. Alexius Med. Ctr. v. Nesvig*, 971 N.W.2d 878 at *P20 (N.D. 2022) (reversing district court order requiring hospital "to disclose the identity of the persons who created the [peer review] documents"); *Yuma Regional Med. Ctr. v. Superior Ct.*, 175 Ariz. 72, 75 (Ariz. App. 1993) ("We simply see no reason to disclose the names of

the participants in a peer review proceeding other than to somehow discover information relevant to that proceeding"); *Trangle v. Rojas*, 150 Ohio App. 3d 549, 557 (Oh. App. 2002) (denying motion to compel and holding that "because members of the review committees may not testify as to matters produced or presented during review committee proceedings, the identities of these individuals cannot lead to the discovery of admissible evidence"). No Minnesota law supports Plaintiff's request, and a ruling that Mayo must identify its reviewers would result in a flood of discovery directed to those members—the precise chilling effect the Legislature acted to prevent. *See Amaral*, 598 N.W.2d at 388.

*Utech v. Bynum* illustrates why Plaintiff's attempt to invade Mayo's peer review process must be foreclosed. No. 07-4712 (DWF/RLE), 2008 U.S. Dist. LEXIS 109508 (D. Minn. Nov. 14, 2008). There, as here, the plaintiff in a medical malpractice action served a Rule 30(b)(6) notice on the defendant hospital with topics directed squarely at the substance of the hospital's peer review and quality-assurance process. The court sustained the hospital's objection to the topics that sought the records and monitoring activity of its quality-assurance function, and "orally directed the [p]laintiff to refrain from any inquiry into [the hospital's] peer review process[]." *Id.* at *5–*6 (*quoting* Minn. Stat. § 145.64, subd. 1). This Court should do the same.

There is no way for a corporate designee to testify regarding Topics 9 or 19 without disclosing statutorily confidential information. These topics do not skirt the edges of the protection; they are addressed to the review organization itself—its membership, its meetings, its investigation, and its conclusions. Mayo's peer

review process *"shall not be subject to [] discovery,"* Minn. Stat. § 145.64, and the Court should bar Plaintiff from seeking 30(b)(6) testimony on these Topics.

### C. Plaintiff Cannot Seek Expert Testimony Through a Corporate Witness (Topics 1, 2, 4, 5, 6, and 23)

Plaintiff's 30(b)(6) Notice improperly seeks expert testimony on the fundamental medical issues in this case. Specifically, Topics 1, 2, 4, 5, 6, and 23[3] call for specialized testimony within the scope of Rule 702—including on whether, when, and by what "detailed means" air was introduced into Ms. Molls's vascular system and the "pathway(s)" by which any such air traveled to Ms. Molls's brain—and are thus improper.

Under Rule 701 of the Federal Rules of Evidence, a non-expert witness may only offer opinions that are: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "What is essentially expert testimony, however, may not be admitted under the guise of lay opinions." *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001). Expert testimony is required where questions "relate[] to issues that are beyond the ken of people of ordinary experience." *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 827 (D. Minn. 2011).

Parties are not permitted to seek Rule 30(b)(6) deposition testimony on issues that require expert opinion. *See Erickson v. Pope Cnty.*, No. 19-cv-3061

[3] Ms. Molls's medical record states that she suffered a "cerebral air embolism," and Mayo does not plan to contest this fact. However, to the extent related medical issues are disputed and subject to discovery, they plainly call for expert testimony.

(SRN/LIB), 2021 U.S. Dist. LEXIS 263110, at *15-16 (D. Minn. June 14, 2021) (granting protective order and holding that "[defendant's] Rule 30(b)(6) deponents will not be required to answer any questions regarding… any assertion in the at issue paragraphs which would require an expert opinion.") (collecting cases); *United States ex rel. Tiesinga v. Dianon Sys.*, 240 F.R.D. 40, 43 (D. Conn. 2006) (granting protective order where "counsel baldly sought to use the guise of a Rule 30(b)(6) deposition to try to force a non-designated expert to embrace the trial opinions expressed by the parties' own designated experts. There is no warrant in the rules for such conduct.").

The Court should restrict Plaintiff from asking Mayo's corporate witness about issues that call for expert opinion. Whether and how air entered Ms. Molls's vascular system (Topics 1 and 2), the anatomical pathway by which any air reached her brain (Topic 5), whether she suffered an air embolism stroke (Topic 6); whether her stroke resulted from a breach of the standard of care (which also impermissibly calls for a legal conclusion); and whether the Catheter had "any defects whatsoever" (Topic 23), are quintessential questions of expert medical and medical device engineering judgment. These questions can be answered, if at all, only through "scientific, technical, or other specialized knowledge within the scope of Rule 702," and are thus not facts "known or reasonably available" to a corporate organization. Fed. R. Civ. P. 30(b)(6). No corporate designee can answer these questions from perception or from Mayo's institutional knowledge.

The Federal Rules supply a process for discovery into the issues encompassed by these Topics, but it is not through Rule 30(b)(6). Opinions on the mechanism and cause of Ms. Molls's injury have been properly exchanged

through the expert disclosures pursuant to Rule 26(a)(2) and the Court's scheduling order. Plaintiff cannot now compel Mayo to manufacture an additional, unqualified expert: a lay employee, educated by counsel, who must opine under oath and with binding effect on the fundamental medical issues in this case.

The Court should relieve Mayo of any obligation to produce a witness on Topics 1, 2, 4, 5, 6, and 23.

**D. Plaintiff Seeks Improper Contention Testimony (Topics 4 and 23)**

Topics 4 and 23 fail for a further, independent reason: they are improper contention topics. Topic 4 demands "[e]ach fact, document, ESI, witness, and reasons" supporting Mayo's position that Ms. Molls's stroke did not result from a breach of the standard of care, and Topic 23 demands "all facts, documents, ESI, witnesses, and reasons" bearing on whether the Catheter had "any defects whatsoever."

It "is widely accepted that 30(b)(6) topics which seek to depose on all of the bases for the claims in a case and the contentions made in support of those claims are overly broad" as well as "burdensome, unwieldy, and likely disproportionate to the needs of the case." *Elsherif*, 2020 U.S. Dist. LEXIS 154361, at *2; *see also Fairview,* 2021 U.S. Dist. LEXIS 215816, at *7 (denying motion to compel because "30(b)(6) topics which seek to elicit deposition testimony on all facts in support of a claim or contention…are overly broad, improper topics for a Rule 30(b)(6) deposition"); *Inline Packaging, LLC v. Graphic Packaging Int'l*, No. 15-cv-3183 (ADM/LIB), 2018 U.S. Dist. LEXIS 230597, at *10 (D. Minn. Jan. 23, 2018) (granting protective order because the "widely-accepted finding that 30(b)(6) topics which

seek to depose on all of the bases for the claims in a case and the contentions made in support of those claims… are overly broad is persuasive"). Topics 4 and 23 are the paradigm this District has repeatedly rejected: a lay corporate representative cannot be expected to marshal and orally present the entirety of counsel's proof on breach, causation, and product condition without invading the work-product doctrine.

**E. Plaintiff Improperly Seeks Corporate Testimony About Nurse Weiss's Personal Knowledge (Topics 10, 16, 20, 24, and 25)**

Plaintiff seeks testimony on information exclusively within Nurse Weiss's personal knowledge, including statements she made about the care, the training she received related to central venous catheter use, steps she took to document or demonstrate the June 10 blood draw, and the steps she took to respond to or treat Ms. Molls.

All of these topics are properly the subject of Plaintiff's deposition of Nurse Weiss, not Mayo's corporate designee. Rule 26(b)(2)(C)(i) requires the Court to limit discovery that is "unreasonably cumulative or duplicative" or that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." A Rule 30(b)(6) deposition is not a proper vehicle for Plaintiff to discover the personal knowledge of an individual she is already deposing.

Courts routinely enter protective orders against corporate deposition topics that merely duplicate the testimony of the individual witnesses with firsthand knowledge. *See Bombardier Rec. Prods. v. Arctic Cat, Inc.*, No. 12-cv-2706, 2014 U.S. Dist. LEXIS 157957, at *3 (D. Minn. Sept. 24, 2014) (granting protective order precluding deposition where evidence of the witness's unique knowledge was "de minimis and conclusory at best"); *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543

(4th Cir. 2004) (affirming protective order barring a Rule 30(b)(6) deposition that was cumulative and duplicative of discovery already obtained from the individuals with knowledge of the events); *Rollins v. Cone Distrib., Inc.*, 2016 WL 10650414, at *1 (N.D. Fla. Apr. 28, 2016) (holding that a corporate deposition was disproportionate and duplicative where the plaintiff had already deposed other witnesses with knowledge of the relevant facts).

Topics 10, 16, 20, 24, and 25 are addressed to Nurse Weiss's own conduct: the statements she made (Topic 10), the training she received (Topics 16 and 24), the documentation she created (Topic 20), and the clinical steps she personally took (Topic 25). A corporate designee could testify on these subjects only by interviewing Nurse Weiss and repeating what she says—secondhand testimony about a witness Plaintiff will examine firsthand, under oath, at a deposition Plaintiff has already noticed.

The individual topics underscore the point. Topic 10 asks whether Nurse Weiss admitted that her actions contributed to the event; Mayo has already answered, in writing and subject to its objections, that it is aware of no such admission, and Plaintiff remains free to ask Nurse Weiss herself. Iverson Dec. Ex. D at Response to Topic No. 10. Topic 24 goes further, demanding the details of any training Nurse Weiss received "from any source," including sources outside Mayo and not within Mayo's possession, custody, or control. And Topic 25 asks a corporate witness to narrate Nurse Weiss's clinical response minute by minute—information that is documented in the medical record or otherwise only known to her.

Preparing a corporate witness on these subjects would burden Mayo with re-creating, secondhand, testimony that Plaintiff is about to take firsthand. Rule 26 prevents this, and the Court should relieve Mayo of any obligation to produce a designee on Topics 10, 16, 20, 24, and 25.

### F. The Remaining Topics Are Overbroad, Irrelevant, and Unduly Burdensome

***Mayo Training and Policies (Topics 11, 12, 14, and 15).*** Plaintiff seeks testimony regarding Mayo's guidelines, policies, protocols, and training programs concerning central line use, the prevention of air entry into the vascular system, and the reporting of adverse events.

These topics are improper in three independent ways. First, they are overbroad: Topic 15 alone demands testimony on "all training programs" for all "Mayo employees"—a universe comprising tens of thousands of personnel across multiple campuses—without any temporal or substantive limit tying the demand to Ms. Molls's care, and Topic 14 adds "the identity of all persons involved in the formulation or adoption" of every central-line policy Mayo has ever maintained. No witness could be adequately prepared on those subjects, and none should have to be. *See Elsherif*, 2020 U.S. Dist. LEXIS 154361 (granting protective order as to overbroad Rule 30(b)(6) topics); *Prokosch,* 193 F.R.D. at 638 (holding the noticing party "must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned").

Second, these Topics are unreasonably cumulative. Mayo has already produced the relevant policies and guidelines, identified by Bates number in its responses, and they speak for themselves; requiring a witness to memorize and

recite produced documents adds nothing that the documents do not already provide. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Third, any testimony regarding these policies is inadmissible according to black-letter law. To the extent these topics reach guidelines generated or directed by a review organization, or the "rationale" behind them, they intrude on the peer review process discussed above, and peer-review-protected guidelines are in any event not admissible to establish negligence. *See* Minn. Stat. § 145.65. Plaintiff has already served expert reports on the standard of care; a lay recitation of policy documents serves no purpose that those experts and the documents do not already serve.

Courts have recognized that a 30(b)(6) deposition is not warranted where the information sought merely asks the designee to memorize information which has already been produced in a more efficient form. *See e.g., Zayed v. Buysse,* No. 11-1042 (SRN/FLN), 2011 U.S. Dist. LEXIS 171252, at *5 (D. Minn. Oct. 19, 2011) (entering protective order where Rule 30(b)(6) topics were "nearly identical" to other discovery); *Upsher-Smith Labs, Inc. v. Fifth Third Bank,* No. 16-cv-0556 (JRT/HB), 2018 U.S. Dist. LEXIS 246214, at *11 (D. Minn. Apr. 23, 2018) (explaining a "protective order may be warranted to prevent a Rule 30(b)(6) deposition on topics that have already been explored and obtained through other discovery methods"). And it hardly needs to be stated that requiring Mayo to produce testimony that is categorically inadmissible pursuant to statute would be disproportionate to the needs of the case, because such an exercise would impose burden and expense on Mayo for no evidentiary purpose.

***The Catheter (Topics 7, 8, 17, 18, and 23).*** Plaintiff seeks testimony related to the Catheter, including whether the catheter was subject to any recall, what actions Mayo took relative to the Catheter after the June 10 incident, the steps Mayo took to inspect or examine the Catheter for defects, and whether the Catheter had any defects.

The recall Topics, 7 and 8, are moot and not related to any disputed issue. At Plaintiff's request, Mayo has offered to stipulate that the Catheter used in Ms. Molls's June 10, 2023 blood draw was not the subject of any manufacturer recall at the time of the procedure. Preparing a corporate witness to testify about a non-existent set of facts is plainly disproportionate.

Topics 17 and 18 are improper. They demand testimony on "[a]ll actions" undertaken by Mayo or its personnel relative to the Catheter after Ms. Molls became symptomatic, and all steps taken to inspect or examine the Catheter—demands that are vague, are not stated with reasonable particularity, and sweep in both the post-incident medical care documented in Ms. Molls's medical record (knowledge of which is with her treating clinicians, see *supra* Section E) and any examination of the Catheter undertaken by or for Mayo's review organizations (which is protected, see *supra* Section B).

Mayo has no non-privileged responsive information beyond that which it has already disclosed. Mayo has already disclosed that it sent the Catheter to Medtronic, that Medtronic received it, and that Medtronic later reported that it had lost the Catheter. Iverson Dec. Ex. A. Mayo has produced documents that substantiate those facts, which are not in dispute. Mayo also admitted in response to Plaintiff's requests that "physician and nursing leadership conducted an

assessment of the palindrome catheter at issue and the assessment did not reveal any punctures, holes, or visual deficiencies." Iverson Dec. Ex. F at Response to Request No. 3.

Topic 23, which demands "all facts, documents, ESI, witnesses, and reasons" bearing on whether the Catheter had "any defects whatsoever," is an improper contention topic and is improper for the same reasons discussed, *supra*, Section D.

***Similar Events and Outside Reporting (Topics 13 and 27).*** Plaintiff seeks testimony regarding any reports Mayo made about the June 10 incident to outside institutions and the details of any purportedly similar incidents at Mayo.

Reports that Mayo made to outside institutions are neither relevant nor discoverable. Whether, when, or how the event was reported to the Minnesota Hospital Association, the Joint Commission, the National Quality Forum, or CMS (Topic 13) has no bearing on the only two questions this case presents: whether the standard of care was breached, and whether any breach caused Ms. Molls's injury. Mayo has already produced the only non-privileged report that it is aware of—a MedSun Report—and to the extent any such reporting was generated or directed by a review organization, the topic is independently barred by Minn. Stat. §§ 145.61–.67.

Topic 27 fares no better. It demands the "circumstances, details, and cause(s)/root cause(s)" of every air embolism following a blood draw at any Mayo hospital over more than a decade. Topic 27 plainly calls for peer-review protected material, see *supra* Section B, and is, in any case, irrelevant. Topic 27 sweeps in every incident at any Mayo facility over more than ten years, without regard to the patient's condition, the equipment used, the provider involved, or the clinical

context—none of which Plaintiff even attempts to tie to the June 10, 2023 blood draw at issue. *See In re Medtronic, Inc.*, 184 F.3d 807, 808 (8th Cir. 1999) (prohibiting "discovery of the names of patients, physicians and facilities involved with other [similar incidents] and, especially, the names of physicians who reported to Medtronic incidents similar to those reported by [plaintiff]"); *see also* Fed. R. Evid. 404(b).

The Topic also demands the "cause(s)/root cause(s)" of each incident—the paradigmatic work of a review organization, see Minn. Stat. § 145.61, subd. 5—and information about non-party patients protected by federal health-privacy law, see 45 C.F.R. pts. 160, 164.

***Medical Records (Topics 21 and 26).*** Plaintiff seeks testimony related to Plaintiff's medical record. Topic 26, as amended, asks a corporate designee to testify to the medical steps taken by "any Mayo personnel" after Ms. Molls became unresponsive—but only those steps "not documented in the medical records." The amendment concedes the topic's futility. A designee has no institutional source from which to learn undocumented acts; the only people who know what they did but did not chart are the individual providers, each of whom is identified in the medical record and may be deposed. Rule 30(b)(6) obligates a corporation to testify to information "known or reasonably available to the organization"; it does not require Mayo to conduct an oral history project by canvassing every employee for unrecorded recollections that the individual providers can supply directly. Fed. R. Civ. P. 30(b)(6); *see* Fed. R. Civ. P. 26(b)(2)(C)(i); *supra* Section E.

Plaintiff's request for testimony regarding whether Ms. Molls's medical record "contain[s] any errors" (Topic 21) is similarly unduly burdensome and

cumulative: Mayo has already provided an interrogatory answer stating that it is not aware of any errors in Ms. Molls's records. Iverson Dec. Ex. G at Interrogatory No. 14. Further, Ms. Molls's record spans thousands of pages. The topic would require a single witness to vouch for the accuracy of every entry and to speculate on which entries Plaintiff might contend bear on "any issues in this case." It is also wholly duplicative of Plaintiff's Interrogatory No. 14, which Mayo has already answered. *See Zayed*, 2011 U.S. Dist. LEXIS 171252, at *5 (granting protective order where 30(b)(6) topics were "nearly identical" to interrogatories).

### G. The Court Should Preclude the Depositions of Mayo's Patient Safety Personnel

Finally, Plaintiff has indicated that she will seek to depose three Mayo employees who worked in Patient Safety during the relevant time period: Patient Safety Manager Janee Klipfel, Patient Safety Specialist Deirdre Kolb, and Patient Safety Specialist Nicole Schueler. None of these individuals provided care to Ms. Molls, none appears in her medical record, and none witnessed the June 10 blood draw. Their only connection to this case arises from their Patient Safety roles—that is, from work performed by or for Mayo's peer review organizations following the June 10 incident. Schueler Dec. ¶¶ 6-8.

For the reasons set forth in Section B, everything these witnesses know about Ms. Molls's care is "data and information acquired by a review organization, in the exercise of its duties and functions," and testimony disclosing it is barred. Minn. Stat. § 145.64, subd. 1. Minnesota law does not merely protect a defined set of documents; it renders the review organization's proceedings, records, data, and information immune from discovery, and these individuals have no independent

knowledge of the care at issue apart from their roles in Mayo's peer review process.

The statute's original-source limitation does not help Plaintiff. Information otherwise available from original sources does not become privileged merely because it was presented to a review organization, Minn. Stat. § 145.64, subd. 1, but that principle entitles Plaintiff to obtain the underlying facts from the original sources—here, Ms. Molls's medical record and the clinicians who treated her—not to depose the reviewers. Klipfel, Kolb, and Schueler are not original sources of relevant information: they did not treat Ms. Molls, and any facts they possess were gathered in, and are inseparable from, the confidential review process. Plaintiff cannot identify any non-privileged knowledge these witnesses hold, and their depositions could proceed only by intruding on protected material at every turn. *Cf. Utech,* 2008 U.S. Dist. LEXIS 109508, at *5 (prohibiting inquiry into the peer review process during a deposition in a medical malpractice case).

Permitting these depositions would inflict precisely the harm the Legislature sought to prevent when it enacted the peer review statute. If serving in a patient safety role means being haled into every malpractice case touching an event the employee helped review, the candid internal review the statute exists to foster will not survive. *See Amaral*, 598 N.W.2d at 384–85. The Court should preclude the depositions of Klipfel, Kolb, and Schueler or, at a minimum, enter an order barring any inquiry into the existence, membership, activities, data, or findings of any Mayo review organization.

## CONCLUSION

For the foregoing reasons, Mayo respectfully requests that the Court enter a protective order (1) relieving Mayo of any obligation to produce a Rule 30(b)(6) designee on the Topics listed in Plaintiff's Amended Attachment A; and (2) precluding Plaintiff from taking the depositions of Janee Klipfel, Deirdre Kolb, and Nicole Schueler.

Dated: July 23, 2026

DORSEY & WHITNEY LLP

By */s/Alan Iverson*

Andrew Brantingham (#0389952)
brantingham.andrew@dorsey.com
Alan Iverson (#0399747)
iverson.alan@dorsey.com
Luke Wetterstrom (#0403794)
wetterstrom.luke@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

*Attorneys for Defendant Mayo Clinic*