**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Tricia L. Molls and Kurt Molls,<br><br>Plaintiffs,<br><br>vs.<br><br>Mayo Clinic,<br><br>Defendant. | Civil No.: 25-CV-2800 (DTS)<br><br>**Memorandum of Law in Opposition to Defendant's Motion for Protective Order and in Support of Plaintiff Tricia Molls' Motion to Compel Discovery** |

## Introduction

Mayo seeks an order declaring that it need not produce a single witness concerning 25 discrete topics described in Plaintiffs' 30(b)(6) deposition notice, nor need it produce three other key witnesses whose depositions have been requested. Mayo's rationale: privilege, disproportionality, expert information, and/or the information is available through other witnesses. We will show below that these purported justifications run contrary to the law, and that, given the context of this case, the Court should deny Mayo's motion in its entirety.

This is not to preclude the possibility that some of the materials and information Mayo has refused to supply are privileged. But even for those materials most likely to be legally shielded from discovery, Mayo has failed to provide the predicates for any privilege they claim—predicates the law requires

and which are needed for the Plaintiffs and the Court to evaluate Mayo's privilege claims. Mayo's attitude seems to be that Mayo alone will act as its own "check" concerning whether any materials are privileged. This is Mayo's apparent justification for its counsel refusing to even collect from Mayo and review most of the materials it now claims to be privileged. This is a classic case of the fox guarding the hen house.

We are asking this Court to deny Mayo's motion for a protective order, and to grant Plaintiffs' motion to compel. We explain why, below.

**Factual Background and Procedural History**

In this medical malpractice case, Plaintiffs allege that Mayo nurse Abigail Weiss, failed to clamp Tricia Molls' central venous port catheter during a routine blood draw, thereby allowing what the medical community, the Minnesota Department of Health, the Joint Commission on Accreditation of Healthcare Organizations, and Medicare all consider a "never event": the introduction of room air into Ms. Molls' vascular system, leading to a stroke because the air blocked the flow of blood just as a blood clot does. *See* Amended Complaint ("Compl."). This is known in medicine as an air embolism. Ms. Molls suffered brain damage from the lack of oxygen to her brain cells. *Id*. Mayo, for its part, denies Nurse Weiss acted negligently and has pled an affirmative defense of third-party responsibility. *See* Amended Answer ("Ans.") (ECF Doc. 36) at ¶¶ 36-38.

Mayo has disclosed that it will call an expert at trial who will testify that Ms. Molls' embolism may have been caused by "a physical defect in the venous catheter at issue, which could potentially allow air to enter the catheter and cause an embolism . . .." McBride Dec., Exhibit ("Ex.") A,[1] (Malpass Dec.) at 7. Indeed, Mayo apparently intends to present a summary judgment motion on the grounds that it is equally likely that a catheter defect caused the embolism as it is that Nurse Weiss's actions caused it.

Thus, the central factual question for the jury will be whether Tricia Molls suffered an air embolism because Nurse Abigail Weiss negligently handled Ms. Molls' catheter, or whether the embolism resulted from some unidentifiable defect in the catheter.

**a. Ms. Molls' injury and Mayo's investigation**

The answer to that question is in Mayo's possession. Ms. Molls suffered the air embolism during her blood draw on June 10, 2023. In the aftermath of the embolism, Mayo conducted an investigation into the event. On June 30, 2023, several members of the group who investigated Ms. Molls' air embolism met with Ms. Molls and her husband (and co-Plaintiff) Kurt Molls. Their conversation was recorded. *See* Ex. B. During the conversation, Mayo informed Plaintiffs that a

[1] Any reference to an "exhibit" throughout this memorandum refers to the declaration of Michael McBride filed in support of this response and motion.

comprehensive investigation was undertaken into the air embolism and Ms. Molls' catheter. *Id*. at 9. The nursing manager told Plaintiffs that she interviewed Nurse Weiss and that Nurse Weiss did several reenactments in front of a variety of Mayo personnel. *Id*. at 10. They described Nurse Weiss's training, generally, and shared the nursing unit manager's opinion at the conclusion of the investigation that the air embolism "probably occurred during the blood draw . . .." *Id*. They described the examination that was underway of the catheter itself. *Id*. at 11. They shared the details of meetings with "Patient Safety" and they told Plaintiffs they expected to receive a final report. *Id*. They told Plaintiffs that the outcome of the "review" would dictate how Ms. Molls' medical bills would be adjusted. *Id*. at 12. Finally, they told Plaintiffs they would "keep you posted" on the status of the investigation into any defects in Ms. Molls' catheter. *Id.* at 19.

Over the next several weeks, Mr. Molls was in regular contact with staff at Mayo regarding the status of the investigation. Mayo told Plaintiffs that the investigation would be "transparent" and that they would be given the results. Ex. C. After several exchanges, Mayo told Mr. Molls in response to his request for

details of the investigation:

From: Benz, Michel L., M.S.N., R.N., O.C.N.
Sent: Tuesday, August 08, 2023 1:43 PM
To: 'kurt@mollscarpentry.com' <kurt@mollscarpentry.com>
Subject: RE: [EXTERNAL] RE: Re: [External] Therapy Discharge

Hi Kurt,

Thank you for the email. I apologize for my delay in responding as I was inquiring on some of the items below. I hope that Tricia is continuing to make progress in rehab, she sounded good when I spoke to her on the phone last week. Sharing a follow-up from the conversation that there should not be any restrictions on Tricia being able to schedule follow-up rehab appointments. Please let me know if you have any issues with scheduling going forward.

I apologize to you and Tricia for the delay on receiving information on the review from Mayo. Please know that much time and attention has gone into reviewing this from myself and others. We are currently awaiting on the external review of the catheter. It was shared that a letter will be going out to Tricia this week with the findings from the internal review, which will address the items below in further detail.

I am here to support you both. I believe the letter will also have an administrative contact, that will assist with some of the other questions that you both have had. Please let me know if additional questions and I will see if I can answer them or another person would be best suited.

Thank you,
Michel

*Id.*

Having promised Plaintiffs Mayo would reveal to them the detailed findings of its internal and external reviews, Mayo's legal department sent a letter to Plaintiffs on August 14, 2023. Ex D. In the letter, Mayo provided no detailed findings, instead bluntly expressing that it had determined Nurse Weiss's care was "appropriate" and providing a brief explanation of the support for that determination from the investigation. *Id*. Mayo further informed Plaintiffs that the review had included a "comprehensive review of the blood draw and subsequent care" including "extensive discussions" with Nurse Weiss and reenactments. *Id*. Seemingly separate from the evaluation of Nurse Weiss's actions, Mayo also informed Plaintiffs that "physician and nursing leadership" conducted a

"thorough assessment of your palindrome catheter." *Id*. Mayo revealed that this investigation did not find any "punctures, holes, or visual deficiencies." *Id*. Finally, Mayo informed Plaintiffs it had sent the catheter to Medtronic for further examination and promised to "contact you following the conclusion of the review." *Id*.

Mayo, however, mislabeled the catheter packaging when it sent the catheter back to Medtronic. Ex. E. When sending a device back to Medtronic—an action that is doubtless common for Mayo—Mayo is required to include an "mPXR number." *Id*. But Mayo did not include that number on Ms. Molls' catheter, resulting in its destruction. *Id*. The catheter has therefore never been available for Plaintiffs to examine, even though Ms. Molls owned it when Mayo's actions resulted in its spoliation, because she had been billed for it.

**b. Plaintiffs' attempts to gather discovery relevant to Mayo's defenses.**

To counter Mayo's product defect defense—which runs contrary to Mayo's own internal investigation—and to meet that defense at trial and in motions practice, Plaintiffs have sought discovery of information regarding the catheter while it was in Mayo's possession. Since Mayo is almost certain not to call any Mayo witness who "thoroughly" inspected the catheter post-incident and found nothing wrong with it, Plaintiffs have sought to know who inspected the catheter,

how that inspection was conducted, and the qualifications of those involved in the inspection.

To that end, on November 20, 2025, Plaintiffs served their initial discovery requests. *See* Ex. F; G; H. Among the requests, Plaintiffs asked for information regarding all aspects of the investigation Mayo discussed openly with Plaintiffs. *Id*.

In its responses, Mayo acknowledged it undertook a review of the catheter and found no defects, disclosed emails regarding the lost catheter, and disclosed its emails with Mr. Molls, but objected to all other attempts to gain discovery from its internal investigation. *See e.g.,* Ex. H at 19 (objecting on peer review privilege grounds to documents concerning in-house investigations); I at 10 (objecting to interrogatory seeking bases of affirmative defenses); J at 2 (objecting that "the phrase 'in connection with' is undefined, vague, and ambiguous," when asked to "admit that the air which caused Plaintiff's air embolism was introduced into Plaintiff's vascular system in connection with the efforts by Abigail Weiss RN to draw blood from Plaintiff on June 10, 2023.").

Despite asserting the peer review privilege from Minn. Stat. § 145.64, Mayo provided no privilege log for any documents it says comprise its "peer review" file. In each of the many meet and confer conferences with Mayo, Mayo repeated its legal position that documents in the peer review file are exempt from any

privilege log requirement. Indeed, in correspondence with this Court, they have said as much Ex. K (regarding requests for Mayo's investigation, "Mayo believes it has no obligation to create a privilege log in response to such improper requests"). More concerning, Mayo's Counsel refuses to collect the documents and information Mayo is withholding on the basis of the peer review privilege or to examine whether they are indeed subject to the privilege. Ex. L at 1 ("we are not required to collect and log Mayo's peer review files, which are *per se* not discoverable"). The only privilege log Mayo has provided is short, listing only 17 documents withheld on the basis of privilege, apparently none of which are from Mayo's "peer review file." Ex. C. Yet six of these 17 documents list "peer review" as the basis for non-production, contradicting Mayo's legal position that documents protected by peer review are never required to be listed in a privilege log. Mayo has provided no explanation for this contradiction.

Having been stymied at every turn to collect the written information about Mayo's internal review that was promised to Plaintiffs by Mayo's patient safety department more than three years ago, Plaintiffs served a notice to Mayo of taking Fed. R. Civ. P. 30(b)(6) depositions regarding 25 topics. Iverson Dec., Ex. C. After a meet and confer discussion, Plaintiffs amended the notice. *Id*. Ex. E. Mayo nonetheless maintained its position that it would produce no witness on any of the topics, opting instead to move for a protective order, asking the Court, in Plaintiffs'

view, to approve its efforts to shield the key, relevant information concerning its investigation into the nurse's conduct and the catheter involved.

**Argument**

Mayo is attempting to win this lawsuit by advancing an argument it knows is factually incorrect: that Ms. Molls' catheter had a defect causing her air embolism. Not only is it factually incorrect, this trial position runs contrary to Mayo's corporate position: that the catheter had no defect. Worse, Mayo is attempting to advance this factually incorrect theory while using every means at its disposal to prevent Plaintiffs from discovering the facts in Mayo's exclusive possession that contradict its affirmative defense. Mayo will have to argue at trial that its internal catheter inspection somehow can't be trusted, that it was somehow incomplete. This, while claiming that Plaintiffs are entitled to absolutely no information regarding who inspected the catheter and how thoroughly it was inspected, and no information concerning Mayo's post-incident investigation of the nurse's actions. The Court should deny Mayo any protective order, and order Mayo to produce documents and witnesses on these critical topics.

## I. Mayo cannot be allowed to avoid discovery of relevant and material facts.

Discovery in federal court is intentionally broad. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant"). Under Rule 26(b)(1), a party

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* So long as discovery is relevant to the "actual claims or defenses that are at issue in the litigation," it is permissible. *Sherman v. Sheffield Fin., LLC,* 338 F.R.D. 247, 252 (D. Minn. 2021). "In the context of discovery, 'relevant' has been defined as encompassing 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Walker v. Northwest Airlines Corp.*, CIV. NO. 00–2604 MJD/JGL, 2002 WL 32539635 at *1 (D. Minn., Oct. 28, 2002) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

The court may enter a protective order only upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A). The party objecting to discovery bears the burden of proving good cause and "cannot rely on broad or conclusory allegations

of harm." *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021) (citing *Gulf Oil v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

In addition to depositions of named individuals, a party may designate a corporate entity as a deponent. Fed. R. Civ. P. 30(b)(6). The topics to be covered must be served in writing and "describe with reasonable particularity the matters for examination." *Id.* The corporate entity must then provide a witness who is able to testify on the designated topics. *Id.*

As amended, Plaintiffs here are seeking corporate testimony on 25 topics. Mayo places these topics into roughly five categories:

1. Testimony regarding Mayo's investigation of the catheter
2. Testimony regarding Mayo's determination of the cause of Ms. Molls' air embolism
3. Testimony Mayo describes as "Contention" testimony
4. Testimony regarding Nurse Weiss's training, statements, documentation, and clinical steps
5. Testimony regarding Mayo's guidelines, policies, protocols, and training

Plaintiffs also seek the deposition testimony of three individuals who work in Mayo's patient safety department: Janee Klipfel, Deirdre Kolb, and Nicole Schueler. Mayo asserts that testimony on these topics and of these individuals invades Minnesota's peer review privilege outlined in Minn. Stat. § 145.64, or is otherwise objectionable.

But Plaintiffs' Rule 30(b)(6) notice seeks tailored testimony relevant to the defenses Mayo has asserted and well within the scope permitted by the Rules.

Moreover, Mayo has not identified the information that it claims is subject to a privilege with any particularity and has not shown the peer review privilege applies to the information sought.

### a. The peer review privilege does not prevent discovery of the information sought by Plaintiffs (Topics 9 and 19).

Because statutory privileges exclude otherwise relevant information, this Court has a "duty to avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result." *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218 (1961). As with all claims of privilege, "[a] party seeking to assert the privilege must make a clear showing that it applies." *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *accord F.T.C. v. Shaffner*, 626 F.2d 32, 37 (7th Cir. 1980); *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987). In a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision. Fed. R. Civ. P. 501.

As relevant here, Plaintiffs have asked Mayo to produce a corporate witness who can testify on the following topics ("Topics 9 and 19"):

- The identity and position of each member of any Mayo Section 145.61 review organization in June–December 2023, and the dates and participants of any activities directed by such review organization which relate to Tricia Molls.

- All actions undertaken by Mayo to ascertain the cause/root cause of Tricia Molls's air embolism, the identity of all persons so involved, and all information received and findings adduced.

These topics mirror Plaintiff's document requests, requests for admission, and interrogatories, all of which have sought to discover the basis for Mayo's claim that Ms. Molls' air embolism was not caused by Nurse Weiss's actions and were instead caused by a defect in the catheter. As it did in response to all other discovery requests, Mayo asserted that these topics seek information that is exclusively within the peer review privilege in Minn. Stat. § 145.64.

#### i. Mayo has not established that the peer review privilege applies to any of the proffered Rule 30(b)(6) deposition topics.

To incentivize the honest evaluation, correction, and prevention of medical errors, Minnesota's peer review statute protects a narrow set of information from disclosure in civil cases. Minn. Stat. § 145.64, Subd. 1:

> Except as provided in subdivision 4, data and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of a review organization, shall be held in confidence, shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization, and shall not be subject to subpoena or discovery. The proceedings and records of a review organization shall not be subject to discovery or introduction into evidence in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization.

*Id.* The statute clearly delineates a set of prerequisites Mayo must first prove before information or data can receive any protection under the privilege.

First, whatever entity Mayo claims is the holder of the information or data must qualify as a "review organization," which in turn requires the organization to meet one of the qualifying purposes in Minn. Stat. § 145.61, Subd. 5. The organization must be "a committee" composed of "professionals, administrative staff, and consumer directors," who "gather and review information relating to the care and treatment of patients" for a set of purposes. *Id.* . As relevant here, those purposes include: (a) evaluating and improving the quality of health care; and (b) reducing morbidity or mortality. *Id*. If there is no "review organization" that owns the information sought, there is no privilege.

Second, the information or data must have been acquired by the review organization or a person acting at its direction. Minn. Stat. § 145.64, Subd. 1. If an individual is acting of their own accord and not pursuant to the "direction" of a review committee, the information they gather is not protected. *Id.* That is why "it is only documents originally created by the peer review organization that are truly off-limits." *Larson v. Wasemiller*, 738 N.W.2d 300, 315 (Minn. 2007) (Justice Anderson, B., concurring).

Third, the information or data must fall within a protected category. This includes 1) information acquired by review organization in the exercise of review

organization's duties, 2) what transpired at a meeting of the review organization, or 3) the proceedings and recordings of the review organization. *Id.*

Fourth, the information or communications must have been collected and made with an expectation of confidentiality. *Id.*; *see Konrady v. Oesterling,* 149 F.R.D. 592, 594 (D. Minn. 1993). In *Konrady*, the court considered whether information gathered by an Investigational Review Board ("IRB") fell within the definition of a review organization. *Id*. The court there determined that the IRB's work did not fall within one of the defined purposes of a review organization. *Id*. It also found, however, that "[t]he primary purpose of the Minnesota statute is to inhibit the chilling effect on candor that exists absent the privilege." *Id*. at 597 (citing *In re Parkway Manor Healthcare Center*, 448 N.W.2d 116, 120 (Minn. Ct. App. 1989) r*ev. denied* Jan. 18, 1990). Where the "statutory privilege rationale which presumes that the communications were to be held confidential is absent . . ." the privilege did not apply. *Id*.

Here, Mayo has entirely failed to prove that the proffered deposition topics would yield exclusively privileged information, such as would justify a protective order. The first topic—seeking information on the composition and activities of the review committee Mayo claims investigated Ms. Molls' air embolism—is plainly not information collected by or at the direction of the review committee. Rather, it seeks the basic facts that are necessary to litigate Mayo's maximalist

assertion of the peer review privilege. Nothing in the statute protects the identities of committee members, the dates on which the committee was active, or the nature of activities directed by the committee. This is the basic information this Court must have to decide whether the privilege applies at all. Mayo's failure to produce any evidence on the membership, direction, or activities of the committee it claims investigated Ms. Molls' air embolism is fatal to its motion for a protective order.

Similarly, Plaintiffs' topic concerning investigations Mayo undertook to identify the cause of Ms. Molls' embolism does not seek exclusively privileged information. Mayo has produced no evidence to support its position that *any* investigation into Ms. Molls' care was undertaken by a review committee let alone that *all* its efforts to identify the root cause were done at a review committee's direction. In fact, Mayo has not even identified the "review committee" it says undertook the investigation, what its purpose was, when it began its work, or what activities it directed. Moreover, as discussed below, Mayo has voluntarily disclosed significant aspects of the only investigation Plaintiff is aware of, manifesting its clear intent that the information collected as a part of that investigation would not be held in confidence.

In similar disputes regarding Minnesota's peer review privilege, the Court has been outfitted with significant evidence regarding the structure of a hospital's peer review system, the hospital's standardized peer review process, the

documents being withheld, and the activities of the peer review committee *vis a vis* the events at issue. *See e.g., Kraft v. Essentia Health,* No. 3:20-CV-121, 2023 WL 12016990, at *8 (D.N.D. Oct. 3, 2023). Other than making broad, evidence-free assertions, Mayo has utterly failed to provide any evidence that the information Plaintiffs seek to gather in their Rule 30(b)(6) depositions meets any of the statutory prerequisites for protection under the peer review privilege.

The only nod Mayo attempts to make toward meeting its burden is in the declaration of Nicole Schueler, a staff member in Mayo's "patient safety" department. *See* Declaration of Nicole Schueler (ECF Doc. 44). The statute does not make all patient safety topics or offices off limits to discovery. It is only those activities that meet the statutory prerequisites. Mayo doubtless has a well-defined and organized peer review process. Instead of providing the kind of robust evidence our courts have relied upon to determine whether the peer review privilege applies, Ms. Schueler's declaration makes the same broad assertions about generic "patient safety" that Mayo relies upon to argue that all investigation materials are privileged irrespective of their genesis or relation to an actual peer review committee. Consequently, Ms. Schueler's declaration simply does not move the ball forward on Mayo's burden of proof on this issue.

The motion should be denied on these threshold grounds.

**ii. The peer review privilege does not prevent discovery of original source documents and information.**

Even if Mayo were to have shown the existence of a peer review committee that directed an investigation into Ms. Molls' air embolism, that alone does not shield Mayo from providing corporate deposition testimony on the cause of Ms. Molls' air embolism. Although the privilege extends to "all documents contained in review organization files," it does not extend to documents collected by a review committee that are available from sources outside the committee's files. *In re Fairview-Univ. Med. Ctr.*, 590 N.W.2d 150, 154 (Minn. Ct. App. 1999). It also does not shield testimony on "matters within a person's knowledge." *Wasemiller*, 738 N.W.2d at 310. The peer review statute provides that

> Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of it be prevented from testifying as to matters within the person's knowledge, but a witness cannot be asked about the witness testimony before a review organization or opinions formed by the witness as a result of its hearings.

Minn. Stat. § 145.64, subd. 1. As Justice Barry Anderson recognized in his *Wasemiller* concurrence, the privilege may "ultimately be of little consequence because the statute allows disclosure and discovery of any information—such as incident reports, patient charts, records, billing information, and general medical error and safety information—available from an original source." 738 N.W.2d at

315 (Justice Anderson, B., Concurring). This is why a Plaintiff is "free to pursue discovery" of any information that may have wound up in a review committee file "from the original sources of the documents." *Damgaard v. Avera Health*, No. CV 13-2192 (RHK/JSM), 2014 WL 12599853, at *10 (D. Minn. June 9, 2014).

The case of *McKee v. St. Paul Eye Clinic*, *P.A.*, is on point. *McKee v. St. Paul Eye Clinic, P.A.*, No. A14-0681, 2015 WL 1757833 (Minn. Ct. App. Apr. 20, 2015). There, nurses prepared an incident report of their own accord in the aftermath of a surgery they felt was abusive to the patient. *Id*. at *2. The district court determined that although a peer review committee evaluated the incident, the incident report was not drafted at the committee's direction and was therefore an original source document that was discoverable. *Id*. at *7.

*Kraft v. Essentia Health* is similarly on point. No. 3:20-CV-121, 2023 WL 12016990, at *8 (D.N.D. Oct. 3, 2023). There, Plaintiffs conducted Rule 30(b)(6) depositions to gain information about the nature, structure, scope, and activities of the purported peer review committee. *Id*. Among other things, they discovered that the hospital in that case conducted an investigation of medications stored outside their designated temperature range and considered all aspects of that investigation to be peer reviewed. But the court, after significant discovery of the process of peer review, determined the investigations did not meet the statutory definitions, and ordered a special master to be appointed to determine, document-

by-document, whether the privilege applied. *Id*. at *11. Among other things, it ordered that the special master use the following standards:

> Documents distributed to persons not identified as members of the [identified review committees] are not protected by the peer review privilege, though they may be protected by other asserted privileges.
>
> Documents generated in the ordinary course of Essentia's business of providing health care are not protected by the peer review privilege. . .
>
> If the original source of a document is a person or entity other than one of the committees the court recognizes as meeting requirements of a peer review committee, the document is not protected by the peer review privilege, though it may be protected by other asserted privileges.

*Id*.

Here, Plaintiffs are doing precisely what the statute allows, Rule 30(b)(6) contemplates, and the *Kraft* court required: they are using corporate depositions to ferret out non-privileged and original source documents and testimony that have a bearing on Mayo's defense in this case. Plaintiffs know—because Mayo told them—that Nurse Weiss was interviewed immediately following the embolism and made to reenact her blood draw. Plaintiffs also know—because Mayo told them—that Mayo conducted an examination of Ms. Molls' catheter to identify any defects. There is no evidence before this Court that either of those actions were taken at the behest of a review committee. Although the information gleaned from them may ultimately have been put before a review committee, Plaintiffs are entitled to explore the original source of that information. Topics 9 and 19 are

narrowly tailored to define the scope of any review committee activities and then discover whatever information is available from original sources.

The law plainly permits taking this testimony, so Mayo's motion should be denied.

**iii. Mayo waived the peer review privilege by voluntarily disclosing the content of its investigation to Plaintiffs.**

The purpose behind the peer review privilege is well settled: to encourage full and honest participation in the peer review process without fear on the part of healthcare providers that the information will become public. *See Wasemiller*, 738 N.W.2d at 312. However, when this confidentiality purpose is no longer implicated, the privilege should not apply. *See In re Parkway Manor Healthcare Center*, 448 N.W.2d 116, 120 (Minn. Ct. App. 1989) r*ev. denied* Jan. 18, 1990). Like any other privilege, the peer review privilege can be waived. The statute contemplates waiver, describing circumstances in which it is not waived. Minn. Stat. § 145.64, subd. 1 (privilege not "waived as a result of referral of a matter" to a governing body).

Although no case law exists on waiver of the peer review privilege, this Court should look to the ample law on waiver in other situations. Marital privilege, psychotherapist-patient privilege, and attorney-client privilege may all be waived, provided the privilege holder does so "knowingly and voluntarily." *See United States v. Ghane*, 673 F.3d 771, 786 (8th Cir. 2012) (Psychotherapist-patient

privilege); *United States v. Espino*, 317 F.3d 788, 796 (8th Cir. 2003) (marital privileges); *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998). The attorney-client communication privilege—perhaps the most sacrosanct in our system—may be waived by voluntary disclosure to a third party. *In re Grand Jury Proc. Subpoena to Testify to: Wine*, 841 F.2d 230, 234 (8th Cir. 1988).

The attorney-client privilege can also be waived where, "through [an] affirmative act, the asserting party has placed the protected information at issue by making it relevant." *Medtronic, Inc. v. Intermedics, Inc.*, 162 F.R.D. 133, 134–35 (D. Minn. 1995). At-issue waiver is commonly found where either proof of a party's legal contention implicates privileged information, or a client's testimony refers to a specific privileged document. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000). Likewise, there is waiver where a party asserts a claim or defense that relies upon privileged information. *Shukh v. Seagate Tech., LLC*, 872 F. Supp. 2d 851, 857 (D. Minn. 2012) (citing *Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994)). Waiver will be found where (1) assertion of the privilege is a result of an affirmative act; (2) through the affirmative act, the asserting party has placed the protected information at issue by making it relevant; and (3) application of privilege would deny the opposing party access to information vital to its defense. *Medtronic, Inc. v. Intermedics, Inc.*, 162 F.R.D. 133, 135 (D. Minn. 1995).

Here, Mayo has clearly waived any privilege it may have held over its investigation into Ms. Molls' air embolism by volunteering to give her the results. In the immediate aftermath of the embolism, Mayo pledged to Plaintiffs that it would conduct an investigation and, critically, report its findings to Plaintiffs. Exs. B, C. This manifested a knowing, voluntary decision on the part of Mayo to reveal whatever investigation it undertook to Mr. and Ms. Molls. It also eviscerated any need for confidentiality and thereby the entire purpose of the statute. Moreover, consistent with its knowing and voluntary waiver, Mayo told the Plaintiffs in writing about the nature of the investigation, the actions taken to complete the investigation, and the ultimate findings of their evaluation of both Nurse Weiss's actions and the catheter itself. Ex. D. There can be no question that Mayo knowingly and voluntarily waived any peer review privilege it may have held.

But Mayo has gone one step further. Mayo will be defending this case with expert testimony that asserts Ms. Molls' catheter may have had a defect that introduced air into her vasculature despite Nurse Weiss doing everything correctly. Ex. A. This runs contrary to Mayo's own evaluation of the catheter—a fact Plaintiffs know because Mayo revealed the results of its investigation to them—and Mayo possesses the information and witnesses who determined there was no defect. So, by asserting this defense and producing expert evidence to support it, Mayo has placed its investigation into the catheter at issue. Mayo

caused the catheter to be lost, so there is no alternative source of information available to Plaintiffs to meet this defense other than Mayo's documents and employees. Mayo has thus waived any privilege by placing its own investigation into the catheter at issue in this case.

Because Mayo has waived any privilege, and because Topics 9 and 19 are necessary for Plaintiffs to gather the evidence necessary to meet Mayo's asserted defense, the motion should be denied.

**b. Plaintiff is not seeking expert testimony.**

Mayo next objects to topics 1, 2, 4, 5, 6, and 23, arguing that they seek expert testimony not permitted by Rule 30(b)(6). That is not Plaintiffs' design, but even if it were, the rule permits it.

The Rule clearly permits a party to obtain the factual bases for a defense. *Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, No. 12–CV–2692 (JRT/LIB), 2014 WL 12610146, at *6 (D. Minn. May 23, 2014) (quoting *U.S. E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 433 (D. Nev. 2006)) ("the use of Rule 30(b)(6) depositions for the purpose of obtaining the factual bases for a defendant's asserted position statements or affirmative defenses is not novel."). Nothing in the rule prohibits a party from seeking opinion testimony from a corporate entity, either. A corporate "designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions." *United States*

*v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996). Moreover, "[t]here is no impediment to expert witnesses serving as a Rule 30(b)(6) representatives." *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. CV 12-1029 (PAD), 2018 WL 11417748, at *5 (D.P.R. June 8, 2018). Plaintiffs are entitled to know the corporation's position on matters relevant to the litigation. *Id*.

Here, topics 1, 2, 4, 5, 6, and 23 are narrowly tailored to obtain the specific factual basis for Mayo's defenses. Topic 1 asks for testimony regarding how, when, and the means by which air was introduced into Ms. Molls' vascular system. Topic 2 seeks testimony on whether the air entered her system during Nurse Weiss's blood draw. Topic 4 seeks the facts supporting Mayo's position that Nurse Weiss met the standard of care. Topic 5 seeks Mayo's position on the pathway air took to get to Ms. Molls' brain. Topic 6 seeks the very simple answer to whether Mayo concedes Ms. Molls' was in its care when she suffered the air embolism. And Topic 23 seeks Mayo's position—which it was willing to tell Plaintiffs before this suit—on whether the catheter had any defects.

These are each the proper subject of corporate testimony. Mayo has denied Plaintiffs' allegations and asserted that it did not cause Ms. Molls air embolism. Mayo concluded in-house that there was no defect in Ms. Molls' catheter. Yet now Mayo asserts that a defect may have caused the air embolism. Plaintiff is simply

seeking by these Rule 30(b)(6) deposition topics to ascertain the factual bases for Mayo's defenses. The rule plainly permits Plaintiff to do so.

To support its position, Mayo cites *United States ex rel. Tiesinga v. Dianon Sys*., 240 F.R.D. 40, 43 (D. Conn. 2006), and *Erickson v. Pope Cnty*., No. 19-cv-3061 (SRN/LIB), 2021 U.S. Dist. LEXIS 263110, at *15-16 (D. Minn. June 14, 2021). A cursory read of these cases reveals they are no help to Mayo. In *Dianon*, the corporate deposition had *already occurred* and the issue was whether the United States' instruction to the witness not to answer several questions was a proper instruction. *Dianon,* 240 F.R.D. at 41. The questions at issue were asking the Rule 30(b)(6) deponent to specifically agree with the deposing party's expert opinions. *Id*. at 42. There were no facts discussed at all, simply questions like, "Doctor, is there anything in that segment of [the expert's] report with which you disagree?" *Id.* These questions are the type that must be rejected as seeking expert testimony, not those that would accompany the topics Plaintiffs seek testimony regarding in this case.

*Erickson* is worse for Mayo. No. 19-cv-3061 (SRN/LIB), 2021 U.S. Dist. LEXIS 263110, at *15-16 (D. Minn. June 14, 2021). There, the court distinguished between Rule 30(b)(6) topics that raised *only* expert testimony (e.g. "'lorazepam is a well-known treatment for alcohol withdrawal and delirium tremens,' and the general effectiveness of the drug") from those that raise fact questions properly within the

scope of the Rule (e.g. "The CentraCare Defendants failed to collect information about Erickson's medical condition and medical history and recommended a non-individualized course of treatment . . . As such, they deviated from the standard of care they owed Erickson."). *Id*. at *6-7. The court allowed the latter. *Id*. In fact, the *Erickson* court determined the vast majority of topics—which sought the reasons behind the Defendant's denials in its Answer just as the proposed topics do here—to be proper. *Id.* The *Erickson* court also concluded that the testimony sought, although covering the same ground as testimony given by fact witnesses, was nevertheless proper for a corporate deposition. *Id*. at *8.

Plaintiffs are not seeking expert testimony; they are seeking to discover the bases for Mayo's claims and denials. The motion should be denied.

**c. Plaintiff is not seeking "contention" testimony.**

Mayo next objects that topics 4 and 23 seek "contention" testimony that is too broad and all-encompassing without specifying the particular subject areas that are intended to be questions. But topics 4 and 23 do not seek contention testimony. "Contention" testimony is disfavored to the extent that it invades the attorney-client privilege and asks the corporate deponent to parrot the legal arguments put forward by counsel. *Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.,* No. 12–CV–2692 (JRT/LIB), 2014 WL 12610146, at *6 (D. Minn. May 23, 2014). The factors this Court considers are (1) whether the attorney-client privilege or

work product doctrine prevents the witness from answering questions regarding facts supporting the parties' contentions or affirmative defenses, and (2) if not, whether a Rule 30(b)(6) deposition is an overly burdensome method of acquiring this information, or whether less burdensome methods exist. *Id.*

For support of its argument that topics 4 and 23 cross into impermissible "contention" testimony, Mayo cites *Elsherif v. Mayo Clinic*, No. 18-cv-2998-DWF-KMM, 2020 U.S. Dist. LEXIS 154361, at *2 (D. Minn. Aug. 25, 2020), and *Inline Packaging, LLC v. Graphic Packaging Int'l*, No. 15-cv-3183 (ADM/LIB), 2018 U.S. Dist. LEXIS 230597, at *10 (D. Minn. Jan. 23, 2018). Mayo's reliance on these cases is unavailing. In both cases, the Plaintiff served Rule 30(b)(6) notices asking to depose a witness regarding every fact and legal basis relevant to its claims and defenses. For example, "The factual and legal bases for Mayo's affirmative defenses, Paragraphs 178–250 of its Answer" (*Elsherif*) and "All instances in which Inline contends that Graphic interfered with Inline's contracts or business relationships, Inline's contention as to how Inline was damaged by any alleged interference, and the factual basis of such contentions" (*Inline Packaging*). These topics clearly require the opposing party to "to marshal all of its factual proof and prepare a witness to be able to testify on a particular defense." *Id*. They invade the attorney-client relationship in an impermissible way.

This case is much more akin to *Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, No. 12–CV–2692 (JRT/LIB), 2014 WL 12610146, at *5 (D. Minn. May 23, 2014). There, the defendant noticed a deposition under Rule 30(b)(6) seeking testimony regarding "[t]he factual basis, evidentiary support, and actions taken to investigate the basis for the allegation pled in paragraph 19 of Arctic Cat's Complaint that [a series of snowmobile models] infringe one or more claims of [relevant] patent." *Id*. The district court there found the notice sufficiently specific and well within the scope of the Rule. Unlike the broad assertions in *Elsherif* or *Inline Packaging* that sought every factual and legal basis for a claim, the Rule 30(b)(6) notice in *Arctic Cat* was limited to a single allegation. *Id*. Gathering the facts supporting that contention from a corporate witness was proper. *Id*.

Here, as in *Arctic Cat,* Plaintiffs are seeking testimony that is narrowly tailored to specific facts of Mayo's defense. In particular, topic 23 asks for testimony regarding "Whether the Palindrome catheter used for Tricia Molls' blood draw on June 10, 2023 had any defects whatsoever, and, if so, all facts, documents, ESI, witnesses, and reasons for concluding the catheter had any defect." Iverson Dec., Ex. E. This topic is not the kind of broad assertion for all evidence of every claim or defense. Rather, it painstakingly specifies the particular subject area that is intended to be questioned. *See Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000). Mayo conducted a review of the catheter and

arrived at the conclusion that it did not have a defect, so we know that Mayo has a corporate position on the topic. Its corporate position is the reverse of its litigation position. Plaintiffs are simply seeking the factual basis for Mayo's corporate position that there was no defect, which Rule 30(b)(6) permits them to do.

**d. Plaintiff is not seeking testimony exclusively in Nurse Weiss's personal knowledge.**

Mayo next argues that topics 10, 16, 20, 24, and 25 seek only testimony that is exclusively within the personal knowledge of Nurse Weiss. Not so. With the potential exception of topic 25, they facially do not ask for Nurse Weiss's knowledge at all.

Unlike fact witnesses, corporate designees testify "to the position of the organization and not his or her personal opinion." *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, No. CV 13-1686 (JRT/FLN), 2017 WL 9325026, at *7 (D. Minn. Oct. 12, 2017). Consequently, although a party may have "received deposition testimony from other witnesses on this issue, a Rule 30(b)(6) deposition is distinct from the depositions of those witnesses" and corporate testimony is permissible on the same subjects. *Bertrang v. Wisconsin Cent., Ltd.*, 301 F.R.D. 364, 367 (D. Minn. 2014); *see also, Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2018 WL 9919939, at *7 (D. Minn. Jan. 23, 2018) (rejecting the same "duplicative testimony" argument advanced by Mayo). One

important reason for permitting corporate testimony on topics that may also be informed by lay witness testimony is to bind the corporation to its position and "prohibit the organization from submitting contradictory or inconsistent evidence unless it is accompanied by a reasonable explanation." *Id.* at *7.

Here, Mayo's expert disclosures rely exclusively on the veracity of Nurse Weiss's explanation of her actions drawing blood from Ms. Molls' catheter. *See* Malpass Dec. at 3 ("Dr. Malpass is expected to testify that Nurse Weiss's testimony, if accepted by the finder of fact, demonstrates that Nurse Weiss acted appropriately and consistent with the standard of care."). Given the centrality of Nurse Weiss's testimony to Mayo's own defense in this case, Plaintiffs are entitled to explore all sources of evidence that would support or refute her account of the blood draw. Moreover, Mayo's product defect defense contradicts its corporate position. Plaintiffs are likewise entitled to pin Mayo to the facts—like Nurse Weiss's training on catheter use—that inform that defense. Plaintiffs' proposed topics seek to do just this.

Topic 10 seeks information on any other employees of Mayo who took statements from Nurse Weiss in which she admitted to contributing to Ms. Molls' air embolism. Although Nurse Weiss may recall who she made admissions to, she has an incentive to withhold that information or selectively recall it. This topic seeks information from other sources on statements she made, not her own

testimony. Plaintiffs know that Mayo took statements from Nurse Weiss, because Mayo told Plaintiffs so. This means the corporation or its agents possess statements relevant to this case that are independent of Nurse Weiss's testimony.[2] Plaintiffs are permitted to obtain these statements from the corporation.

Topics 16, 20, 24, and 25 seek information regarding the training Nurse Weiss received on the use and management of catheters like Ms. Molls' and her documentation of her efforts to draw blood from Ms. Molls. These topics likewise are not seeking Nurse Weiss's individual knowledge, but rather that corporation's information. Plaintiffs are aware that Mayo took substantial efforts outside Ms. Molls' chart to get to the bottom of her air embolism. These requests seek information not contained elsewhere in the records that will substantiate or contradict Nurse Weiss's likely testimony.

Critically, unlike the cases cited by Mayo—in which substantial other discovery was provided on the proposed Rule 30(b)(6) topics—Mayo has stalwartly refused to provide information on these topics in response to numerous

---

[2] Among the statements Mayo employees took, was one from Mr. Molls, who was present at Ms. Molls' side during the blood draw and who witnessed Ms. Molls becoming unconscious from her air embolism. Mayo has refused to produce Mr. Molls' statement and documents regarding it. We ask the court to order the production of all such documents, which are clearly not privileged, and which Fed. R. Civ. P. 26(b)(3)(C) requires be produced.

requests for production of documents and interrogatories. Plaintiffs are permitted to gain the corporation's position and knowledge on these matters.

**e. Plaintiff's remaining topics are narrowly tailored to discover facts relevant to this case.**

Mayo's final, catchall argument is that the remaining topics are overly broad and unduly burdensome. A simple read of the topics, however, demonstrates they are all narrowly tailored to the defenses Mayo has asserted in this case.

When "discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate." *See In re Folding Carton Antitrust Litigation*, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate' "); *Alexander v. Parsons*, 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome ... is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence"). Moreover "if discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable." *Hendrickson v. Rapid City, Pierre & E. R.R., Inc.*, No. 5:22-CV-05063-LLP, 2023 WL 5486239, at *9 (D.S.D.

Aug. 24, 2023) (citing *United States v. Nysco Labs., Inc.*, 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960)).

To the extent that Mayo has no representative with direct knowledge of all topics sought, Rule 30(b)(6) requires "the responding party to prepare a designated representative so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity." *All. for Global Justice v. District of Columbia*, 437 F. Supp. 2d 32, 37 (D.D.C. 2006). And "If no current employee has sufficient knowledge to provide the requested information, the party is obligated to prepare [one or more witnesses] so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995).

Mayo lumps together several different categories of requested topics in this argument and pleads mercy from this Court from having to "conduct an oral history project by canvassing every employee for unrecorded recollections that the individual provider can supply themselves." Mayo Mem. at 23. That is simply not what Plaintiffs are seeking. As this Court will no doubt see in reviewing the remaining topics in Plaintiffs' corporate deposition notice, Plaintiffs are focused on gaining testimony from Mayo that is directly relevant to its stated defense: that Ms. Molls' air embolism could have been caused by a defect in the catheter.

Testimony regarding any recalls (topics 7 and 8) relevant to the catheter directly bear on the defense.[3] Testimony regarding Mayo's policies, procedures, and training on central line catheter use (topics 11, 12, 14, and 15) are plainly relevant to its defense that Nurse Weiss correctly operated Ms. Molls' catheter. Moreover, black letter law dictates such guidelines and policies are discoverable. *Kalish v. Mount Sinai Hosp.*, 270 N.W.2d 783, 786 (Minn. 1978) ("guidelines . . . may be discovered"). And testimony regarding whether Mayo will contend that Ms. Molls' medical records contain errors (topic 21), is likewise obviously relevant and directly proportional to the case.

These arguments are a sideshow, however, to the real topics Mayo wishes to evade. In topics 13, 17, 18, 26, and 27, Plaintiffs are seeking corporate testimony to nail down the universe of facts surrounding Mayo's defense that Ms. Molls' catheter was defective. They do so from several angles. First, by gathering the facts surrounding Ms. Molls' air embolism not contained in her records. Second, by gathering the facts pertaining to Mayo's investigation and disposition of the catheter itself.[4] Third, by gathering information on Mayo's experience and

[3] Mayo argues that this topic is moot because it has offered to stipulate that the catheter was not subject to a recall "at the time of the procedure." Mayo Mem. at 21. But that stipulation notably leaves open the contention by Mayo that the catheter was subject to a recall at some other time. Regardless, Plaintiffs have not agreed to this stipulation for this reason, which means the topic is not moot at all.

[4] Plaintiffs intend to raise a spoliation motion regarding the catheter. To acquire the facts necessary to support that motion, Plaintiffs must take testimony from a

response to similar events in the past. Each of these topics are carefully tailored to gain information that will enable Plaintiffs to meet Mayo's product defect defense at trial. The topics are permissible subject matter for corporate depositions, and this Court should not prohibit Plaintiffs from inquiring into them.

**f. Mayo has utterly failed to show that its "patient safety" personnel are covered by the peer review privilege.**

As discussed in Section I(a), Mayo must show that the information at issue meets the prerequisites of the peer-review privilege and is not available from an original source. Mayo argues that testimony from Janee Klipfel, Deirdre Kolb, and Nicole Schueler would consist solely of peer-review material. But Mayo has provided no evidence that a peer-review committee directed any of their actions or that their knowledge originated in the peer-review process.

In support of its contention, Mayo provides a declaration from Ms. Schueler. *See* Schueler Dec. Ms. Schueler doubtless works in patient safety. But that does not shield all information she knows. Her declaration does not identify any peer review committee. It does not say she or her colleagues were working at the

---

Mayo designee explaining the process for sending the catheter to Medtronic, Mayo's knowledge of proper labeling, and Mayo's prior experience sending devices back to their manufacturers. These topics will enable Plaintiffs to show that Mayo knew the proper way to send devices for examination, did not follow those procedures, and thus caused the catheter to be lost.

direction of the committee. Mayo has provided no evidence that the information they possess falls within the privilege.

Rather, all evidence points to the contrary. For the first months after Ms. Molls' air embolism, Mayo pledged transparency and promised Plaintiffs they would be given the results of the investigation. Mayo cannot now claim the activities of its patient safety department are privileged when it acted entirely contrary to that position pre-suit. As discussed above, Plaintiffs also contend that any privilege that may apply has been waived by the voluntary disclosure of the results of their patient safety review, and by Mayo affirmatively placing the investigation into the catheter at issue in this lawsuit.

For these reasons, this Court should not preemptively prohibit Plaintiffs from taking relevant testimony directly bearing on the central issue in this case.

## II. Mayo cannot shield itself from evidence it possesses that is contrary to its theory of defense by improperly claiming the information is subject to the peer review privilege; discovery must be compelled.

In several requests for production of documents and interrogatories, Plaintiffs have sought information regarding Mayo's investigation into Ms. Molls' air embolism and whether her catheter had a defect permitting the entry of air into her system. Exs. F, G. Mayo has resisted these requests vehemently on the grounds that the information sought falls within Minnesota's peer review privilege. In addition to resisting Mayo's protective order, Plaintiffs respectfully request this

Court compel Mayo to produce discovery regarding its investigation into and conclusions regarding Ms. Molls' catheter and air embolism. This includes issuing an order compelling Mayo and its counsel to comply with Rule 26(b)(5)(A) and provide a log of the documents it is withholding on the claim of peer review privilege.

**a. Mayo must produce a privilege log sufficiently outlining any material withheld on the basis of the peer review privilege to permit Plaintiffs and this Court to determine whether a privilege applies.**

A party resisting discovery on the grounds that a document is privileged "must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The rule does not distinguish between privileges and applies with equal force to assertions of a peer review privilege. *See Csiszer v. Wren*, No. 3:08CV3011, 2008 WL 5071874, at *4 (W.D. Ark. Nov. 25, 2008) (requiring production of itemized privilege log where peer review privilege is asserted). "The purpose of the privilege log is, in part, to provide opposing counsel information to spot deficient claims." *Oxygenator Water Techs., Inc. v. Tennant Co.*, No. 20-CV-0358 (KMM/HB), 2022 WL 22886713, at *4 (D. Minn. Mar. 31, 2022). Before Plaintiffs or this Court can properly determine

whether an item falls within a privilege, Mayo must disclose what it is withholding.

Mayo has adopted a maximalist position regarding the scope of Minnesota's peer review privilege that is not supported by the law. Mayo's Counsel refuses to collect the peer review committee's files to identify for themselves what is actually contained within the files. Ex. K. Although it is withholding documents on the basis of the peer review privilege, Mayo refuses to create a privilege log to detail what is being withheld *Id.;* Exs. J, K. Mayo's position is that because information regarding its investigation into Ms. Molls' catheter may fall within the peer review privilege, it is not required to even disclose what it is withholding on the basis of that privilege. Plaintiffs, this Court, and even Mayo's Counsel cannot know whether privilege applies without actually reviewing the materials over which Mayo is asserting the peer review privilege. That is the whole reason Rule 26 requires parties to expressly state privilege claims and detail the documents over which the privilege is being asserted.

The law simply does not support this blatant violation of Rule 26(b)(5)(A). Courts in the District of Minnesota have regularly reinforced the importance of careful documentation of privilege claims. "The party withholding documents as privileged bears the burden of providing a factual basis in the privilege log that justifies the withholding." *Patterson Dental Supply, Inc. v. Pace*, No. 19-CV-1940

(JNE/LIB), 2020 WL 13032906, at *9 (D. Minn. Apr. 2, 2020) (citing *Triple Five of Minn., Inc. v. Simon,* 212 F.R.D. 523, 527–28 (D. Minn. 2002)). To show the party is entitled to claim a privilege it must provide "a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit" from counsel. *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 565 (8th Cir.1997). This applies equally to claims of the peer review privilege. *Kraft v. Essentia Health*, No. 3:20-CV-121, 2023 WL 12016990, at *1 n.1 (D.N.D. Oct. 3, 2023) (court ordered "additional detail, specific to each document over which it claims the [peer review] privilege.")

Where a party makes a categorical claim to privilege, it must nevertheless provide a log of the documents being withheld on the claim of privilege. *Patterson Dental Supply, Inc. v. Pace*, No. 19-CV-1940 (JNE/LIB), 2020 WL 13032906, at *9 (D. Minn. Apr. 2, 2020). And blanket assertions of a privilege will be rejected where a log does not provide sufficient detail to demonstrate fulfillment of the legal requirements to apply the privilege. *Hemmingsen v. Messerli & Kramer, P.A.*, No. CV 09-1384 (DSD/AJB), 2010 WL 11537452, at *3 (D. Minn. May 12, 2010) (citing *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2nd Cir. 1996)).

In each of the cases above, the party claiming the privilege at least provided a log of some sort—though they were deficient and the court compelled more comprehensive information. The *Kraft* case is directly on point. There, the hospital-

defendant asserted a blanket peer review privilege under Minnesota's peer review statute over "various" unidentified documents. *Kraft v. Essentia Health*, No. 3:20-CV-121, 2023 WL 12016990, at *1 n.1 (D.N.D. Oct. 3, 2023). The court ordered an itemized log. *Id*. When the defendant provided an itemized log stating the reason for asserting the privilege as "investigation and quality assurance" the court ordered it to provide even greater detail as to each document. *Id*.

Here, Mayo has declared that it is not required to prepare a log *at all*, let alone a log detailing the documents being withheld. Worse, Mayo's Counsel refuses to even collect and look at the documents they are asserting are privileged. Mayo has thus made a blanket assertion of privilege with no legal review of the documents it is withholding and without providing any factual or legal support for the claim of privilege. This is close to, if not outright, bad faith. *See In re Disciplinary Action Against Colosi*, 977 N.W.2d 802, 812 (Minn. 2022) (finding bad faith where counsel made "blanket privilege claims without providing any factual or legal support for those claims" in disciplinary proceeding).[5]

---

[5] Of course, Mayo's own conduct in this case belies its position that peer review documents need not be logged. Mayo initially produced no privilege log. When Plaintiffs demanded one, Mayo produced a short log more than six months after Plaintiffs' initial discovery was served. *See* McBride Dec. at 1. In the (meager) privilege log Mayo produced, it claimed the peer review privilege over portions of 6 documents. Ex. C.

This Court should rule that Mayo's failure to produce a proper privilege log waives the privilege altogether. Short of that, this Court should compel Mayo to collect all documents over which it is asserting the peer review privilege, review them, and expressly state in a privilege log what is being withheld on the basis of the privilege.

**b. Mayo has waived any claim to peer review privilege and cannot now shield the evidence it voluntarily disclosed and placed at issue with its product defect defense.**

This case asks this Court to decide whether Mayo may voluntarily and intentionally disclose evidence collected during its pre-suit internal investigations and then try to claw back that information by claiming it is privilege during litigation. More significantly, it asks whether Mayo can assert a product defect defense that runs contrary to the evidence it possesses and then suppress the only evidence available to counter the defense. The law does not allow a party to assert a privilege only when it is strategically beneficial. Mayo cannot game the system in this way.

As discussed above, every privilege can be waived if the privilege holder voluntarily and intentionally reveals the privileged information. *See* Supra, Section I(a)(ii). And a party who asserts a claim or defense that places the information at issue waives the privilege. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000). At-issue waiver occurs when (1) assertion of the privilege is a result of

an affirmative act; (2) through the affirmative act, the asserting party has placed the protected information at issue by making it relevant; and (3) application of privilege would deny the opposing party access to information vital to its defense. *Medtronic, Inc. v. Intermedics, Inc.*, 162 F.R.D. 133, 135 (D. Minn. 1995).

It would be one thing if Mayo had not revealed such significant aspects of its investigation to Plaintiffs already. Had Mayo conducted an internal peer review at the direction of its peer review committee, then listed on a detailed privilege log the documents ***created by*** the committee (with dates, authors, subject, etc.), those documents may qualify as privileged. After all, that is the whole point of the privilege—to encourage frank evaluation of patient care without fear that the patient or public will learn of the review's findings.

But here, from the very beginning Mayo promised to reveal its investigation to Plaintiffs. It told them what the investigation entailed, what Nurse Weiss said she did, what Nurse Weiss' reenactments showed, what examinations were undertaken of the catheter, what further steps would be taken, and what the ultimate results of the review were. *See* Exs. B, C. By its every action, Mayo manifested its intention to reveal the details of whatever investigation it undertook. Then, Mayo made the deliberate decision to assert its product defect defense in this lawsuit and employed experts who have founded their opinions on the veracity of Nurse Weiss's description of the blood draw.

It is only now, when Plaintiffs seek to collect evidence that could be used at trial to combat Mayo's product defect defense, that Mayo asserts it never should have revealed its investigation in the first place. But privileges "cannot be used as both a shield and a sword. . .." *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998) (finding waiver of attorney-client privilege where defendant raises reliance on legal advice as a defense). A party cannot "selectively waive its privilege . . .." *Shukh v. Seagate Tech., LLC*, 848 F. Supp. 2d 987, 991 (D. Minn. 2011), aff'd, 872 F. Supp. 2d 851 (D. Minn. 2012) (finding waiver of attorney-client privilege where party disclosed some communications but withheld others). Indeed, when a party voluntarily reveals privileged materials during pre-suit investigations, it waives privilege over the entire subject matter encompassing the waiver. *U.S. S.E.C. v. Welliver*, No. 11-CV-3076 RHK/SER, 2012 WL 8015672, at *10 (D. Minn. Oct. 26, 2012). This Court should not permit Mayo to gain an unfair advantage at trial by asserting a defense that is contrary to its own corporate determination and then shield the only evidence available to contest that defense by retroactively asserting a privilege it has already waived.

This Court should compel Mayo to produce all documents responsive to Plaintiffs' RFPs, and unqualified answers to Plaintiffs' Requests for Admissions and Interrogatories.

**c. Mayo has not properly claimed privilege and has thereby waived it.**

Waiver of a privilege also occurs when a party fails to assert the privilege properly. *See St. Paul Reinsurance Co., Ltd. v. Com. Fin. Corp.,* 197 F.R.D. 620, 640 (N.D. Iowa 2000) (citing *Disidore v. Mail Contractors of Am., Inc.*, 196 F.R.D. 410, 413 (D. Kan. 2000)). In order to properly assert a privilege, a party must at minimum "produce a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its ... counsel." *Rabushka v. Crane Co.*, 122 F.3d 559, 565 (8th Cir.1997). In *Disidore*, the court concluded that a "blanket claim" or "conclusory assertion" as to the applicability of the work product doctrine does not satisfy the privilege claimant's burden of proof, and that "[a] party's failure to meet [its] burden when the trial court is asked to rule upon the existence of the work product immunity is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made." *Disidore*, 196 F.R.D. at 413 (*citing Peat Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984), and *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000)). Moreover, a privilege is waived "where a party serves no response at all for a lengthy time after a response is due, where the party fails to provide a privilege log, and where the nature of the information requested suggests that an objection would normally be made." *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 425 (D. Minn. 2012)(citing

*Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 (9th Cir.1992), *Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir. 1981), *Horace Mann Ins. Co.,* 238 F.R.D. at 538, *Pham v. Hartford Fire Ins. Co.,* 193 F.R.D. 659, 661–62 (D. Colo. 2000), and *Smith v. Conway Org., Inc.,* 154 F.R.D. 73, 76 (S.D.N.Y. 1994)).

Even if it had not deliberately waived the peer review privilege by voluntarily revealing its contents pre-suit, Mayo nevertheless waived the privilege by failing to timely and properly assert the privilege. Mayo has persistently refused to provide a privilege log detailing the documents it is withholding on peer review privilege grounds even after several rounds of meet and confer conferences, exchanges of correspondence, and even discovery conferences with this Court. Its decision to provide no timely log in a situation where the peer review privilege would normally be asserted cannot be excused by inadvertence or mistake. This is a deliberate decision by Mayo to make a maximalist claim to the privilege. It should suffer the consequences of that decision. *See U.S. S.E.C. v. Welliver*, No. 11-CV-3076 RHK/SER, 2012 WL 8015672, at *8 (D. Minn. Oct. 26, 2012) ("Parties must recognize there are potentially harmful consequences if they do not take even minimal precautions to prevent against the disclosure of privileged documents—either to agencies in pre-suit investigations or opposing parties in the course of discovery").

This Court, in keeping with well-settled waiver law, should find that Mayo has waived the peer review privilege over all documents not listed in its privilege log and compel the disclosure of those documents.

**Conclusion**

Because Mayo has failed to prove the peer review privilege applies to the topics covered in Plaintiffs' Rule 30(b)(6) notice, has failed to prove that Plaintiffs' Rule 30(b)(6) topics are improper or overbroad, and because Mayo has refused to engage in good faith discovery on its investigation and conclusions regarding Ms. Molls' air embolism, Plaintiffs should be permitted to take corporate testimony on the topics outlined in their notice of taking Rule 30(b)(6) depositions. Mayo's motion for a protective order should be denied.

Similarly, because Mayo has failed to prove its investigation into Ms. Molls' air embolism and examination of her catheter fall within the peer review privilege, and because Mayo has waived any claim to privilege through voluntary disclosure, at-issue waiver, and failing to properly assert the privilege, Mayo should be compelled to produce documents and evidence concerning its investigation into Ms. Molls' air embolism.

Dated: August 6, 2026

**CIRESI CONLIN LLP**

By: */s/ Michael P. McBride*
Thomas J. Conlin (#139555)
Brandon E. Thompson (#349173)
Michael P. McBride (#397292)

225 South Sixth Street, Suite 4000
Minneapolis, MN 55402
(612) 361-8200
TJC@CiresiConlin.com
BET@CiresiConlin.com
MPM@CiresiConlin.com

**ATTORNEYS FOR TRICIA MOLLS**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tricia L. Molls and Kurt Molls,<br><br>Plaintiffs,<br><br>vs.<br><br>Mayo Clinic,<br><br>Defendant. | Civil No.: 25-cv-02800-DTS<br><br>**Plaintiff Tricia Molls' L.R. 7.1 (f)(2) Certificate of Compliance** |

The undersigned hereby certifies that Plaintiff's Memorandum in Opposition to Mayo's Motion for a Protective Order and in Support of Plaintiff's Motion to Compel Discovery complies with the limits of Local Rule 7.1(f) and with the type-size requirements of Local Rule 7.1(h).

This document was prepared using Microsoft Word for Office 365, and I certify that the word-count feature of the program was set to include all text – including headings, footnotes, and quotations – prior to counting the number of words in the document.

Based on the above, I certify that the document contains 11,457 words.

Dated: August 6, 2026

**CIRESI CONLIN LLP**

By: */s/ Michael P. McBride*
Thomas J. Conlin (#139555)
Brandon E. Thompson (#349173)
Michael P. McBride (#397292)

225 South Sixth Street, Suite 4000
Minneapolis, MN 55402
(612) 361-8200
TJC@CiresiConlin.com
BET@CiresiConlin.com
MPM@CiresiConlin.com

**ATTORNEYS FOR TRICIA MOLLS**